UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REBECCA METZINGER, M.D.,                          CIVIL ACTION NUMBER:
V.                                                CA No. 2:20- cv- 599
ROBERT L. WILKIE, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS
VETERAN's                                         JUDGE _____
HEALTH ADMINISTRATION                             MAGISTRATE _____
**************************************************************************

**ORIGINAL CIVIL SUIT**
**FOLLOWING EEOC FINAL DECISION**
**(in Agency Case NO 461-2018-00121X IN EEOC CASE NO 2003-0629-2017103788)**

NOW INTO COURT, through undersigned counsel, comes Complainant Rebecca

Metzinger, M.D. a resident of the Parish of Orleans and a person of the full age of majority and

who states as follows:

**JURISDICTION /FEDERAL QUESTION**

1.

Jurisdiction is proper in this Court under 28 U.S.C. 1331 as it involves a violation of Title

VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended based on unlawful

discrimination and reprisal.  As it appears in Volume 42 of the United States Code, beginning at

section 2000e, Title VII prohibits employment discrimination based on race, color, religion, sex

and national origin. This is a civil action following an Agency ruling from the Department of

Veterans Affairs Office of Employment Discrimination Complaint Adjudication, Washington

D.C. ("OEDCA") (Final Order attached as Exhibit 1)  which dismissed the Plaintiff's  claim based

on procedural grounds on October 25, 2019, and regarding which, by statute, the Complainant is

entitled to now file a civil suit in  this Court.

2.

**VENUE**

Venue is proper in this Court as plaintiff is  a resident of the Parish of Orleans, State of Louisiana and  employed as a Title 38 physician with the defendant's Veterans Health Administration (the VA) facility located in New Orleans Louisiana, Parish of Orleans and the Defendant is a  United States government agency who is subject to suit in this Court.

3.

**PARTY DEFENDANT**

Made Defendant/Appellee herein is Robert L. Wilkie, Secretary, Department of Veterans Affairs, Agency, (the VA or the Agency) in connection with EEOC Ruling No: 461-2018-00121X ad this complaint.

4.

**PARTY PLAINTIFF**

Dr. Metzinger is a board-certified Ophthalmologist, with a subspecialty in corneal surgery. She was hired as Chief of the Ophthalmology Section of the New Orleans based VA hospital, as a Title 38, physician on July 6, 2008, the date she entered on duty, and accepted her appointment as a GE 15/1 at a salary of 240.000 dollars.   Dr. Metzinger was hired as a Tier II, which refers to her higher level of leadership and administrative responsibilities.

5.

**TIMELINESS OF CIVIL SUIT**

Judge Erania Ebron, a Hearing Officer/Administrative Judge (AJ) with the VA has rendered a procedural decision dismissing Complainant's hearing request in the matter involving the plaintiff, Dr. Rebecca Metzinger's Title VII claims, over Plaintiff's Opposition. <u>Exhibit 2. AJ Order, and Exhibit 3 Opposition.</u>   The VA made that decision final on November 21, 2020 <u>Exhibit</u>

1 Agency Final Ruling.  The Decision was received by Dr. Metzinger on November 25, 2019. This was despite plaintiff's correspondence advising why Judge Ebron's dismissal was erroneous as a matter of law. Exhibit 4 Letter to Agency. This Civil suit is being filed timely within ninety days of receipt said final decision as required by law.

### 6.
### STANDARD OF REVIEW
### BURDEN IS ON THE AGENCY

"The burden is on the agency to produce evidence in support of its final decision.  As a    result, when it dismisses a complaint on the basis that it *is identical* to a civil action pending in U.S. district court, it must produce evidence of that        filing."   *Dimond  v. Postmaster   General*, EEOC. No. 01931248, 3660/B11 (1993).

### PROCEDURAL HISTORY SUPPORTING THIS CIVIL ACTION

### 7.

On May 22, 2017 Plaintiff advised Darvon Thomas, Human Resources Supervisor at the VA facility, as well as EEO administrator, Karen James, that she wanted to file a complaint based on several issues, including but not limited to the fact that the female services chiefs were paid at a lower rate or range than male service chiefs, that as the Ophthalmology Service Chief,  was being paid less than physicians who work under her supervision, in her section, who are male, and for hostile work environment harassment. On June 20, 2017 Dr. Metzinger filed a formal complaint, alleging *inter alia* wage discrimination based on sex under both Title VII and as a violation of the Equal Pay Act. She received formal acknowledgment of the filing of the complaint on July 17, 2017 as well as several incidents of hostile work environment and harassment. The EEOC

investigated and Dr. Metzinger was given the right to file a written formal complaint.[1]  The original written  FORM 4939 Complaint of Employment Discrimination (signed on  Oct 5, 2017 and received by Fax at the VA on 10/06/17) set out charges of  1) Employment Discrimination *under Title VII* as well as employment discrimination  under the Equal Pay Act as well as 2)  claims for reprisal/retaliation under both Acts. [2] Dr. Metzinger identified her claim for back pay as under Title VII *as well as* under the Equal Pay Act.[3] Dr. Metzinger specifically requested, in Attachment to Section 11,[4] Declaratory Relief, under both the Equal Pay Act *and* Title VII of the Civil Rights Act of 1991.[5]

### THIS FEDERAL ACTION TRACKS THE EEOC CLAIM/ PRESENTMENT REQUIREMENT IS MET

The Counselor Angela Phillips Cooper in her Oct 13, 2017 report (ROI 27-31) identified Dr. Metzinger' s Charges as follows:

> Claim 1 Evaluation /Performance Appraisal/Proficiency incident Date 05/22/2017 (ROI. 28)
> Claim 2: Pay and Allowances-Salary Determination /incident Date 05/22/2017 (ROI.29)
> Claim 3: Harassment/Hostile Work Environment (Non-Sexual) ROI 30

On Oct. 19, 2017 EEOC sent the Notice of Receipt of the Discrimination Complaint filed on Oct. 6, 2017. [6]

---

[1] For the Court's subsequent ease of reference Complainant has included in footnotes that the Record of Investigation page numbers anticipating that the ROI prepared by the Agency will be made part of this record.

[2] ROI 000005-6) and Complaint ROI 004 – which identifies under B. Basis:  1) Sex and Equal Pay Act, 2) Reprisal 3. Age, Sex, Ethnicity Discrimination and 4) Temporary disability and Section 9 Attachment to VA form 4939
[3] ROI 000005-6 and 7.
[4] ROI.000015. See also, Supplement and First Amendment to Supplement, ROI 47-57.
[5] Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009 (Pub. L. 111-2) amend several sections of Title VII. In addition, section 102 of the CRA) amends the Revised Statutes by adding a new section following section 1977 (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII.
[6] ROI 57

8.

Dr. Metzinger supplemented and amended her Charges on November 25, 2017 (received by the agency by fax on November 27, 2017).[7] In the first Amendment/Supplement Dr. Metzinger claimed 1) Reprisal/Retaliatory Action (on November 17, 2017);[8] 2) Reprisal/Retaliatory Action on Oct. 6, 2017.[9] Dr. Metzinger also charged Reprisal/Retaliatory Action on Oct. 31, 2017.[10] On December 1, 2017 Dr. Metzinger forwarded another Supplement to the first Amendment.[11] The Supplement alleged Reprisal/Retaliatory/Hostile Work Environment Action event on Oct 24, 2017. [12] She specifically charged that she was made the subject/target of an "anonymous" complaint against her in retaliation for her EEOC discrimination claim.[13]

9.

**CHARGES ACCEPTED**

On December 1, 2017 in the Notice of Acceptance and Amendment[14] the Investigator District Manager in the EEOC case, Rodger Evans,[15] ACCEPTED the following claims:

> Event 6 (the lower performance rating May 22, 2017 of Fully Successful for the FY 2016 annual performance period [16]
> Event 7 (paid less than male physician subordinates), [17]
> Event 13 (Lower rating of Fully Successful on November 17, 2017 performance) [18]

---

[7] ROI 46
[8] Section 704(a) of Title VII, 42 U.S.C. Section 2000e-3(a) (unlawful employment practice for an employer to discriminate against any of the employees for an agency or individual because has opposed any practice made an unlawful employment practice by this section OR because such individual has made a charge, testified, or participated in any manner in an investigation under this chapter.)
[9] ROI.47
[10] ROI 49 (attachments located at 51).
[11] ROI 55
[12] ROI 56
[13] ROI 56
[14] ROI 40
[15] ROI 42, paragraph 7
[16] ROI 41
[17] ROI 42
[18] ROI 42

The Investigator also accepted the harassment claim under Title VII consisting of 13 events, 1-13, for investigation.[19]

The investigator's conclusions respecting what was submitted to the AJ are attached.

Exhibit 5 Investigator's Acceptance of Charges.

Mr. Evans assigned the Investigation on January 02, 2018 to Computer Evidence Specialists, LLC, effective Jan. 4, 2018.  The investigation was to be completed within 175 days of the formal filing date of the filing of the last amendment/complaint or not later than 360 days after the filing of the original complaint. [20] The Investigator Submitted her Report on February 23, 2018, well within the 175 days of the last amendment. [21] All claims were accepted.

Judge Ebron set the matter for trial in July 2019.

## DR. METZINGER' SEPARATELY FILED EPA CLAIM

### 10.

On May 21, 2019 Complainant elected to file, while the Title VII claim was pending, a discrete claim in federal court, pursuant to the Equal Pay Act of 1973, 29 U.S.C.206  (EPA) alleging that Plaintiff is receiving and has received less pay than an individual of the opposite sex, for a job requiring equal or greater skill, effort and responsibility and performed under similar working conditions.  That case is pending before Judge Vance as *Metzinger v. Dept. of Veterans Affairs*, No. 2:19-cv-10614-SSV-JCW (E.D. La.) In the Federal pending EPA complaint Dr. Metzinger, appearing as Plaintiff sought an award of monetary damages for sex- based wage discrimination including but not limited to the following damages, *under the Equal Pay Act*:

1. Back pay for three years preceding the original complaint filed in the EEOC alleging Equal Pay Act violations, based on what she would have been entitled to, had she been paid appropriately and in the absence of discrimination based on sex.
2. Interest

---

[19] ROI 43
[20] ROI 24.
[21] ROI 64

3. Liquidated Damages in an amount equal to the back-pay award as the agency's actions constituted a willful violation of the EPA.
4. Non-Pecuniary Damages
5. Future Pecuniary Damages
6. Attorney's Fees
7. Penalties
8. Costs
9. Injunctive Relief, and Declaratory Relief

11.

The EPA based federal claim did not include any of the Title VII claims before the EEOC accepted by the investigator in October 2017 and which were identified by the Investigator and accepted for investigation as outlined above. The federal complaint based on EPA does not displace her Title VII claims which remained pending before the EEOC. In Dr. Rebecca Metzinger' Pre-Hearing Report filed in early July with Judge Ebron, and reviewed at the pretrial conference,  Dr. Metzinger expressly advised that a pending federal complaint regarding Equal Pay Act was filed and that it would be pursued *concurrently with* the Title VII claim pending before the Administrative court.

She stated as follows: (page 1, n.1):

It is to be noted that on June 20, 2017 Dr. Metzinger filed a complaint alleging inter alia wage discrimination based on sex under both Title VII and as a violation of the EPA, hostile work environment, reprisal etc.  That complaint was investigated.
Based on a federal district court complaint being filed, as a matter of law, the EPA based claims of that complaint will be heard in federal court.
However, the Title VII claims, including those based on sex discrimination resulting in lower wage, will remain pending before the EEOC.  See, this case Metzinger v. Robert Wilkie, Secretary, Department of Veteran Affairs, Agency, and EEOC No: 461-2018-00121X.

12.

Counsel  for Dr, Metzinger also informed the VA lawyer, Brandi Powell during one of the depositions in the Spring of 2019  that she intended to file a federal EPA[22] claim on Dr. Metzinger'

---

[22] Congress enacted the [**16] Equal Pay Act of 1963, 29 U.S.C. § 206(d), as an amendment to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

behalf but the Title VII claims would continue, and based on her understanding of the law the federal filing would not displace the EEOC claims with the singular  exception of Equal Pay Act Claim. Complainant also repeatedly, in the Opposition to the VA Motion for Summary Judgment, as well as in the Complainant's Pre Trial report, informed Judge Ebron that she had neglected to include  in her recitation of what was before her several of the Title VII claims that the EEOC Investigator had formally accepted, as detailed in the ROI. Judge Ebron ignored this. Complainant also submitted her own cross motion for Summary Judgment in May 2019 based on Title VII, but Judge Ebron declined to consider it. Judge Ebron never ruled on the Agency's motion.

13.
**FIRST CLAIM:**

**THE AGENCY WRONGFULLY DISMISSED   DR METZINGER'S TITLE VII CLAIMS   AND   CLAIMS MUST BE REINSTATED THROUGH THIS CIVIL ACTION**

Dr. Metzinger' claims before the Agency and filed with the EEOC  are based on 1) reprisal under Title VII  2) hostile work environment  under Title VII  3)  other claims identified by the Investigator   and  accepted for hearing after the investigation was complete under Title VII, including discrimination based on nationality, age and sex, as well as for 4) back pay *under Title VII*.  Hearing officer, Judge Ebron and the OEDCP erroneously rendered a decision GRANTING the VA's Motion to Dismiss the Complainant's request for hearing, and the Title VII claims filed by Dr Metzinger, without award, on the basis that Dr. Metzinger had also filed an Equal Pay Act ("EPA") claim in federal court and therefore in the interest of judicial economy the EEOC claim must be dismissed. Complainant in this First Cause of Action seeks to have her claim reinstated.

Although Title VII claim and the EPA claim – were originally filed with the EEOC. Dr. Metzinger notified the VA counsel, Brandi Powell, that she intended to pursue and Equal Pay Action under the EPA, separately in federal court, simultaneously with her Title VII claim, and thereafter filed the separate EPA claim in federal court, leaving the Title VII claim pending in EEOC, as she was entitled to do. She also notified the EEOC Judge in Complainant's pretrial submission, that the Complainant was pursuing the EPA claim separately and independently of the Title VII claim, which she did not intend to dismiss, as she was legally entitled to do.

14.

This decision by the AJ was ostensibly based on Judge Ebron's factual and legal conclusion that the pending federal suit filed pursuant to the EPA, *Metzinger v. United States Department of Veterans Affairs through its Secretary*, Action No. 19-10614 SSV -JCW (E.D. La. Filed 5/21/19), for back pay, penalties, attorneys fees and costs and interest under the Equal Pay Act, is *equivalent to* and as a matter of law, should result in a dismissal of the captioned Title VII claim action (Case No. 2003-0629-2017103788) pending before the EEOC. Judge Ebron's decision to dismiss the Title VII claim was incorrect as a matter of law and fact, as was the OEDCPA decision to adopt it. Dr. Metzinger is entitled to proceed forward, on the various Title VII claims, which are based on factual and legal allegations different from the separate Equal Pay Act claim for back pay and related damages. Claims under Equal Pay Act and Title VII "are not mutually exclusive." Both avenues of relief may be pursued simultaneously. 29 CFR 1620.27. Complainant cannot collect a dual recovery, but she does collect the higher of the two awards.

15.

In her decision Judge Ebron broadly referenced "legal authority namely the *Burton* case" in support of her decision. At Complainant's request, Judge Ebron, after her decision was rendered, provided via email the citation for *Burton*, on which she relied. This turned out to be a treatise

article by Hadley that discusses the *Burton* case. When reviewed in their original, neither the *Hadley* article nor the *Burton* case actually does support Judge Ebron's decision.   In fact the *Burton*  case actually supports Complainant's position,  as it stands for the principle that the PORTION of the EEOC Complaint that claimed violation of the EPA has been pre-empted by the federal lawsuit, but the balance of the EEOC complaint was not, as the federal complaint did not rely on Title VII. In *Krumholz*, the Commission took the view that the federal court litigation must involve *an identical allegation of discrimination and not merely the same factual basis* as the EEO complaint in order for them to be considered "equivalent.". According to the article in *Hadley* that Judge Ebron cited, *Burton* held as follows:

> In *Burton v. Secretary of Navy, 01943041, 4390/A11* (1995), the Commission further attempted to clarify its position on dismissal of complaints due to the filing of an identical civil action and, in the process, seemingly overruled Hargrett. Not only must the factual predicate of the case be identical to the administrative complaint, but the civil action must be brought under the antidiscrimination statutes. As the Commission explained in *Burton*:

> The Commission has stated that the proper inquiry to determine whether dismissal is warranted is whether the issues in the EEO complaint and the civil action are the same, that is, where the acts of alleged discrimination are identical. *Bellow v. United States Postal Service*, EEOC Request No. 05890913 (November 27, 1989). Moreover, the Commission has recently stated that in order to dismiss an EEO complaint that involves the same matters as are raised in a civil action, the civil action must have been brought under one of the statutes prohibiting discrimination. *Heflin v. Department of the Army*, EEOC Request No. 05940474 (September 29, 1994).

> i. While the record shows that appellant's federal civil action and EEO complaint both concern the trusteeship, *the civil action raised allegations that are different from the allegations raised in the EEO complaint*. Specifically, the federal civil action does not allege that the agency discriminated against appellant on a basis prohibited by Title VII (or any other statute prohibiting discrimination). In contrast, the instant complaint alleges discrimination based on sex and reprisal in violation of Title VII. Therefore, we find that the agency's dismissal of this portion of the complaint was improper.[23]

---

[23] Judge Ebron sent the parties an excerpt from Hadley EEO -- Chapter 3: Formal Complaint Process-- Acceptance and Dismissal, Subchapter 03: Bases for Dismissal of Complaints, Section I: Identical Complaints, Subsection 01: Identical Civil Actions.

Judge Ebron's decision does not follow *Burton*, *Dimond* or *Krumholz*.

16.

An individual may recover under both EPA and Title VII as long as there is not ultimate duplication of remedy for the same wrong. In the event that a particular set of proven facts support both claims, the individual is entitled to the HIGHEST benefit either statute would provide.

**JUDGE EBRON FAILED TO SET ALL THE CLAIMS THAT THE EEOC INVESTIGATOR ACCEPTED FOR HEARING**

17.

In preparing the pretrial order that Judge Ebron sent out to the parties, Judge Ebron failed to include several of the claims that the EEOC Investigator had formally "accepted" and submitted to her in the ROI. Thus the listing of hostile work environment claims that Judge Ebron included on page 1 of her Order and which she purports to have dismissed,  does not show all of the claims that was before her,   just as a prior Order that she issued relative to the pre- trial conference that had been held also did not include the claims the Investigator had accepted per Exhibit 5.

18.

Complainant  pointed this omission  out to her  during the pretrial hearing,  and also in the Opposition to the VA's Motion to Dismiss,  namely, that she had in fact neglected to include in her list of the issues before her several claims that the Agency Investigator had formally accepted in addition to the hostile work environment claim – and all of them were pending before the EEOC, except for the claim for remedy under the EPA which became the basis of the federal filing.

19.

The Title VII claims that were accepted by the investigator are all included in Dr. Metzinger's EEOC claim (including those based on sex discrimination resulting in lower wage), remained pending before the EEOC despite Judge Ebron's deficient Order, and are incorporated in this Civil Action.

**SECOND CLAIM**

**DR. METZINGER IS ENTITLED TO PURSUE HER TITLE VII CLAIMS**

20.

Dr. Metzinger is entitled to trial of and award based on her Title VII Claims as she presented them

in her EEO complaint, which is incorporated herein by reference, and as summarized below.

**WAGE BASED DISCRIMINATION BASED ON SEX**

As Chief of the Ophthalmology Section of the New Orleans VA, a TIER II, cornea

specialist, Dr. Metzinger (was discriminated against on the basis of sex, and ethnicity  in violation

of Title VII, when she was not paid commensurate with her position, duties, and performance, as

compared with male staff subordinates TIER 1 physicians working under her supervision. [24]

Therefore not only was she not paid commensurate with "equal work, requiring equal skill, effort

and responsibility, under similar working conditions within the same establishment," than her male

counterparts,  she was actually paid less than they while performing MORE work – specifically

their work which included seeing patients and performing surgeries, plus her administrative

responsibilities as a Tier II. Furthermore, she charges that female chiefs of section were paid less

than male chiefs of section and that she is entitled to back pay based on willful discrimination in

violation of Title VII. [25]

21.
**HOSTILE WORK ENVIRONMENT**

---

[24] See Report of Investigation Summary p. 00066 (ROI #7).
[25] See Item ROI #7 p. 000066

She was subjected to a hostile work environment/harassment and entitled to commensurate damages based on sex, age, disability, race and reprisal or other protected class discrimination, in violation of Title VII.[26] She is entitled to injunctive and declaratory relief –with respect to the Evaluation for Annual Performance for the fiscal year 2016 and 2017.[27] The offered  basis for the lower evaluations given to her, was "pretextual." The Agency cannot show a legitimate, non-discriminatory reason for its actions. Title VII's prohibition of discriminatory employment practices was intended to be broadly inclusive, proscribing "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853 (1971).

22.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE OF DISCRIMINATORY ANIMUS SUPPORTING CLAIMS OF WILLFUL FAILURE

Among other events Dr. Metzinger will prove the following events showing evidence of discriminatory animus:

1) Dr. Shapira and Dr. Smith removed Dr. Metzinger, the Chief of Ophthalmology Section, as a member of Compensation /Pay Panel reviewing physicians under her  after she received history of the salaries, met with Darvon Thomas, and identified  a discrepancy between her pay and what was paid to Dr. Diamond and other physicians under her, even though she and Dr. Diamond  both started at the same time and were both specialists,  but she started as Chief and he was staff.  Prior to that Dr. Metzinger had been invited to pay panels every year --- Dr. Metzinger

---

[26] See ROIA 000065-66 Items 1-13
[27] See ROI 000065 and 66 (Items 6 and 13)

has not been invited to participate in ANY pay panel committees, even with respect to the staff who she supervises as Chief.

 2) Dr. Smith essentially ordered Dr. Metzinger to step down from her Chief of Ophthalmology position.   He threatened her, told her that Congress "had made it easier to fire doctors" and she should resign. He told her "they (meaning the Chief of Staff and the Director) are out for blood –your blood."

3) Dr. Smith harassed her, without cause regarding her "surgery numbers" and her management of the residents.

4) Dr Smith continued to seek her voluntary resignation without cause as Chief, even after she indicated she had no intention to do so.

5) The most recently hired new chiefs were of Latin descent. Dr. Smith, of Latin descent who lived and was educated in Mexico, attempted to replace Dr. Metzinger as Chief by interviewing a young resident for the job,  also of Latin descent, who was  fairly inexperienced, was working as an attending elsewhere,  and had recently been Dr Metzinger' s own resident (despite stating to others he wanted to replace Dr. Metzinger with someone of "national reputation.")

6) Dr.  Diamond told other members of the Ophthalmology department he was going to be the acting Chief of Ophthalmology.  Based on information received, he took Dr. Smith our for many dinners and Dr. Smith lived with Dr. Diamond for a period of time. Dr. Diamond told Dr Metzinger she should resign and 'take care of her family."

7) Dr. Smith and Schapira met with HR and advised they wanted to replace her, but did not, after they were informed by HR Representative Darvon Thomas, they had to "show cause" for her replacement, and obviously they could not.

8) Dr. Smith advised her to seek a 'disability" after she had a job injury even after she was cleared to go back to work.

9) The Director Mr. Rivera cancelled an award ceremony from the American Legion that she was to receive as a Hero of the American Legion from Commander Mitchell, for her successful effort in re organizing  the new Eye Clinic- and for insisting it receive the very best in technology making it the most advanced VA eye clinic  in the country.  Rivera falsely advised Commander Mitchel that there were many claims against her and there were absolutely no claims against her.

10) An "anonymous" complaint was filed against her that caused a formal investigation without basis by federal agency OIG, who turned it over to OMI. Dr. Metzinger received an email on October 6, 2017 to appear at a meeting with the staff  on behalf of the Office of the Inspector General to answer questions that they may have about services that are provided at SLVHCS.  This email request was sent to Dr. Metzinger via email by Ms. Ceneta Smith-Catchings.   Dr. Metzinger was told  by VA representatives expressly that **Dr. Metzinger was not the subject of the matter, that only a former employee, Dr. Jarod Vincent, was the subject of the meeting.**  Relying on that information, Dr. Metzinger appeared as requested on October 24, without counsel only to find out that she was a target of the OIG complaint. Although in the end she was fully exonerated this investigation caused severe mental distress and embarrassment. During the investigation, Dr. Smith made false statements alleging that there were "many HR actions" against Dr. Metzinger. Discovery during the EEOC proceedings suggests the complaint was filed by Dr Diamond, probably at the instigation of Dr. Smith.  The head of employee relations, Mr. Darvon Thomas during EEO claim discovery testified there were no complaints nor disciplinary warnings against her, not even a verbal counseling. Ultimately after investigation, Dr. Metzinger was completely cleared by OMI.

11) Smith and Schapira, without any cause, openly disparaged her leadership and abilities to Dr. Metzinger's Colleagues at Tulane University --Dr. Caldwell, Dr. Ayalla and Dr. Weiss.

12) On May 22, 2017 Dr. Metzinger was provided an evaluation by Nathan Dion, an administrator, that was completed by Dr. Smith that classified her performance as "fully successful" with one exception -- she was given "unacceptable" on the form respecting leadership. Dr. Metzinger was given an "Unacceptable "as her rating in the leadership category on her performance appraisal 8 months *after* the end of the fiscal year, which was contrary to policy and regulations. She was never given any feedback suggesting she was less than the outstanding evaluation she had received for the eight (8) previous years.

13) The evaluation was untimely, should have been presented by her supervisor, Dr. Smith, Chief of Surgery instead of by and Administrator Mr. Dion, was not preceded by a mid- year review indicating any problems in her performance, was based on a factor that had not occurred during the fiscal year in question and therefore was completely inappropriate.

14) During written discovery in the EEOC claim the Agency (including Chief of Staff. Chief of Surgery, and HR personnel) responded to Dr. Metzinger's Interrogatories with inaccurate and at times false information regarding the comparators. Retention incentives were also used also to increase salaries without following requirements set forth in regulations

Because of these, and other workplace factors, as described in detail in the EEO Charges that she filed with the Agency, that rise to the level of harassment and hostility in violation of Title VII, by the Chief of Surgery Dr. Smith, and the Chief of Staff, based on discrimination based on sex and ethnicity she is entitled to a Title VII award.

**WAGE DISCRIMIATION BASED ON SEX IN VIOLATION OF TITLE VII**

23.

On May 22, 2017 Dr. Metzinger met with Mr. Darvon Thomas, a supervisor at HR. She advised him that the Chief of Surgery had recommended for the September 30, 2016 to October 1, 2016 a lesser performance rating than she had received in all of her prior years and the first time she learned of the rating was when she was asked by another HR official to sign off on this rating that very morning although she had never received any midyear evaluation or conference from her supervisor, the Chief of Surgery Dr. Smith. Neither Mr. Thomas nor any other person in HR had any documentation or indication from any source that Dr. Metzinger was not performing to an acceptable level, or that her performance was in any way not outstanding, except for the fact that Dr. Smith and Dr. Schapira had informed him of their view that the Chief of Ophthalmology should not be her position, and when told they needed to document this took no action. She also reported to Mr. Thomas other acts of hostility and harassment, and advised him as she had recently seen some salary numbers for the physicians she supervised all of whom were male and she asked whether as Chief of Section she should be receiving higher pay than her staff physicians she supervised. Mr. Thomas advised her that she should file an EEO complaint, stating that she was entitled to a higher salary than the staff, as she is a Tier II physician and the staff is Tier 1. Dr. Metzinger filed an EEO claim against the Agency in June 2017.

24.

Thereafter Dr. Metzinger obtained through discovery salary information and learned that whereas the Agency had not convened a Bi annual Market Pay Panel on her behalf since she was employed in 2008, other physicians, all males, "the comparators" who worked under her, had actually received merit pay panels and increased during those years and they were being paid more than she was although she was the Chief of Section. Dr. Metzinger also learned that had she not

been subject to sexual discrimination she would have been the subject of FIVE biannual panels convened from date of her employment. In fact, there had been NONE.

25.

The only pay increase she received was mandatory pay increases -- namely the step increases, or the cost of living increases mandated on the basis of longevity. A market pay panel was convened on her behalf in September 2017.  At the 2017 market pay panel, the panel members stated that Dr. Metzinger was to be awarded a nearly 40,000 DOLLARS pay increase.  That would bring her pay to 300,000 dollars, making her the highest paid in the section. The agency claims that this increase was "effective 2016" so as to avoid penalties associated with her claim however the Market Pay panel was not convened until AFTER she filed her claim and was a direct result of her claim.

26.
**DISPARITIES NOT JUSTIFIED BY MERIT SYSTEM**

The disparity between Dr. Metzinger' s pays, and the comparators was not justified by a merit system. Dr. Metzinger 's job description and responsibilities were broader than the work required of Tier 1 physicians she supervises even though she is still expected to perform surgeries. Dr. Metzinger' s job as Chief of Section also creates additional duties that the Comparators do NOT perform. She supervises all of Ophthalmology and Optometry, including providers and health technicians, a program manager and program support assistant. She is responsible for oversight of the eye clinic and all personnel. She must respond to all complaints from our patients and correspond with patients. She oversees the main clinic in New Orleans, a satellite clinic in Baton Rouge, a teleretinal program, which now runs independently but interacts with the coordinators at times and other telehealth services.  She must do midyear evaluations on employees as well as yearly performance evaluations maintain files, including ensuring all licenses and

trainings and competencies are up to date. She conducts Monthly section chief meeting, monthly section meeting.  She must approve all leave and sign off on all timecards every other week. She is site director for both LSU and Tulane residents, as well as Delgado technician students.  and optometry students for whom she is responsible.  She interacts with pharmacy, logistics, quality, safety and other services to ensure that we have all meds, supplies, instruments and other devices in a safe up to code manner (joint commission standards).

27.

She is also expected to operate and see patients. She is the ophthalmology liaison to the OR and responsible any issues that arise in OR. Dr. Metzinger operates in the VA operating room on Mondays and Fridays. She sees patients all day in clinic on Wednesday, for a half day on Thursday and half day on Tuesday. She performs VA administrative work on Tuesday mornings in addition to seeing VA patients. On Mondays and Fridays, after finishing up in the Operating Room she goes back to clinic. On Thursday mornings she performs surgeries at Tulane as part of a cooperative program and Tulane residents come to the VA. Currently, she supervises 8 technicians, 3 optometrists, 1 program manager, 1 PSA, 8 ophthalmologists in addition to all the residents and students. She additionally was primarily responsible for opening the new Eye clinic at the New Orleans VA hospital requiring enormous time and skill. The eye clinic under her supervision opened on time. it was immediately functional on the day it was supposed to open.

28.
## N0 EVIDENCE OF MISFEASANCE

The VA has admitted there were no documented complaints filed against her. VA Human Resources Deputy Director Debbie Richard confirmed what Dr. Schapira had said in deposition that there is no evidence or documentation of any misconduct, malfeasance, neglect, or conducting meriting disciplinary action against Dr. Metzinger. Nor was there any evidence of any disciplinary action in any of the market panel compensation documents or reports.

29.

## DAMAGES

After the filing of her formal complaint Dr. Metzinger' s salary was increased by 40,000

dollars.  This was in direct response to the complaint. She is entitled to an award of attorney fees

in connection with the filing of the complaint that resulted in that increase.

Complainant is also entitled to an award of damages based on Title VII discrimination

based on sex, age, reprisal   including 1) back pay with 2)  interest, 2) tax adjustment, as well as

3) non-pecuniary, compensatory, damages including pain and suffering in the form of Mental

Anguish and emotional distress and 4) punitive damages under Title VII and 5) attorney's fees.

Per the demands of her original EEOC complaint she is also entitled to:

1) Declaratory Relief including a finding of unlawful reprisal and
violation of the Equal Pay Act and Title VII and attendant
regulations.

2) Injunction, enjoining the VA through its administrators and
supervisors from further violations of the law, and from discriminating
against her on the basis of sex, ethnicity, race or age and from reprisal
of any kind.

3) The Oct 1, 2015 to Sept. 29, 2016 Evaluation containing the
Unacceptable Rating shall be withdrawn and repudiated by the VA
as the result of unlawful motive

4) Sensitivity training for the relevant supervisors  involved.

5) Reinstatement of the "irregular tour" that was terminated by the Chief of Staff.

30.

To the extent same is allowed by law, Complainant chooses trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, based on the facts asserted herein, and in her EEO complaint to which this

Civil Action refers, Dr. Metzinger seeks an award under Title VII granting damages as allowed by

law and all equitable injunctive relief, including but not limited to specifically penalties, attorneys

fees and costs based on the Agency Defendant Department of Veteran Affairs' violation of Title

VII , and any other relief allowed by law.

Respectfully Submitted,

BY: */s/ Marie Riccio*
LAW OFFICES OF MARIE RICCIO
Bar (#11214)
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130
TELEPHONE (504) 528-9500 EXT 239
FACSIMILE (206) 457-1945
EMAIL: marie@officericcio.com
Counsel for Plaintiff Dr. Rebecca Metzinger